UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


SAUL REED                                          CIVIL ACTION


V.                                                 NO. 16-12666


RECEIVABLE RECOVERY SERVICES, LLC                  SECTION F



ORDER AND REASONS

Before the Court are two motions: (1) Receivable Recovery Services, LLC's motion to dismiss pursuant to Rules 12(b)(1) or 12(b)(6) or, alternatively, for summary judgment; and (2) Saul Reed's cross motion for summary judgment. For the reasons that follow, the defendant's motion is DENIED in part (insofar as it seeks dismissal for lack of standing) and GRANTED in part (insofar as it seeks summary judgment dismissing the plaintiff's claims) and the plaintiff's cross motion is DENIED.

**Background**

This litigation arises out of allegedly deceptive and abusive debt collection practices used by a third party collector in its

effort to recover a debt owed by the plaintiff to an ambulance service provider.

When Saul Reed was transported by Acadian Ambulance Service in August 2015 to a hospital in Alexandria, Louisiana, he incurred a bill for $1,556.53. He has never paid Acadian, which engaged Receivable Recovery Services, LLC (RRS) on January 27, 2016 to collect the outstanding debt. On January 27, 2016, RRS mailed to Mr. Reed a written notice, which explained Mr. Reed's rights under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g. Mr. Reed failed to dispute liability for any part of the debt within 30 days.

On three occasions (February 17 and 19 and March 7, 2016), different RRS collectors spoke briefly with Mr. Reed. The February 17 and March 7[1] calls were recorded. Mr. Reed targets the February 17 call as the source of RRS's abusive conduct. A portion of the transcript[2] reads as follows:

---

[1] The March 7, 2016 call was very brief. Mr. Reed said "hold on" and then hung up on the RRS caller after the caller stated:

> This is Ms. Massey with Receivable Recovery Services. We're calling you on behalf of Acadian Ambulance Service. You have a balance of $1,556.53 and were calling as an attempt to collect the debt.

[2] An audio recording and a transcript of the call was filed in the summary judgment record.

**Mr. Reed:** Hello.

**RRS:** Hi, can I speak with Saul Reed?

**Mr. Reed:** Yes ma'am...

...

**RRS:** Hi, it's Ernestine Gill with Receivable Recovery Services. I'm calling...

**Mr. Reed:** Come again?

**RRS:** This is Receivable Recovery Services. We have an account from Acadian Ambulance...um...that they placed here for collections. Has a balance of $1,556.53.

**Mr. Reed:** For what?

**RRS:** We're just trying to call you to work out arrangements to get it taken care of. Um...I do have to tell you that this is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose. Um... Just let me know how you want to get it taken care of...

**Mr. Reed:** I hear you but I ain't knowing what you're saying ma'am.

**RRS:** This is regarding your account for Acadian Ambulance.

**Mr. Reed:** [unintelligible single syllable response]

**RRS:** They have a balance that they want to get paid....

...

**Mr. Reed:** Well, ma'am, I'm not working at the moment ....[unintelligible mumbling]

**RRS:** How long have you been...

**Mr. Reed:** [unintelligible single syllable response]

**RRS:** How long have you been out of work?

**Mr. Reed:** [unintelligible mumbling]...Since I come home from the hospital...

**RRS:** I'm sorry.

...

**Mr. Reed:** I had just got released from jail.

**RRS:** Okay. So how long have you been out of work?

**Mr. Reed:** Years...

**RRS:** Years...

**Mr. Reed:** Two...

**RRS:** Two years. So how are you paying your bills?

**Mr. Reed:** Maybe three...I don't know...

**RRS:** So how are you paying your other bills-your living expenses?

**Mr. Reed:** How am I what? Payin' my other bills?

**RRS:** Right, right. How are you paying your bills? I mean the rent, you know, electric bill, the food bill, the...you know, just your basic living expenses? How are those being paid?

**Mr. Reed:** Ummm...definitely getting' help with that...

**RRS:** Uh-hum... Who's helping you?

**Mr. Reed:** But I don't think that nobody goin' to help me with no...um, nothing bills... especially for nothing...$1500 for what? I didn't get any medicine...I don't recall nothing...I don't.

**RRS:** This was an ambulance ride. The ambulance picked you up from 3007...

**Mr. Reed:** I'm sorry. I'm sorry, so ma'am there's nothing I can do. Nothin' right at this moment...

**RRS:** Are you refusing to pay the debt? Cause you owe the debt. You need to do something to pay these guys back....They were there when you needed 'em

**Mr. Reed:** I...I...

**RRS:** and they helped you when you needed them, so you need to do something. Do the right thing. And try to pay these people back for what they did for you.

**Mr. Reed:** [chuckling]

**RRS:** At this point, you can laugh it off but it's not a joke...

**Mr. Reed:** [continued chuckling] 1,500?

**RRS:** $1556...

**Mr. Reed:** [laughing]...You serious? Right...15?...That sound reasonable to you? I'm asking...but...

**RRS:** That sounds very reasonable. Do you know how expensive an ambulance is? How expensive it is to train an EMT? How expensive the medicines in an ambulance are? Just you stepping inside that ambulance is a good $2,000, so you got a deal. They cut you a

break on this.  You know. But you need to do something to pay these people back...  So and it's gonna' hit your credit.  It's going to affect your credit, so it is not a joking matter. It's something that you need to take seriously.  And you need to do something to get it resolved.  So I'm going to go ahead on and list it.  At this point, it is listed as a refusal to pay, but we will pursue other options and it will get paid one way or another.  So we're here to try to work with you voluntarily, but if you think it's a laughing matter, I'm here to tell you that it's not.

**Mr. Reed:** ...That's not even the point. First off...

**RRS:** What do you mean?

**Mr. Reed:** Second off...

...

**RRS:** Sir, I have no idea what you are talking about...

**Mr. Reed:** Don't worry about it...[hangs up]

Because the recording failed for the February 19 call, Lorena Hooker, the RRS collector who initiated the call with Mr. Reed that day, summarizes the exchange by her affidavit in the summary judgment record:

> On February 19, 2016, at approximately 11:43 AM, and while at work at RRS in my capacity as a collector, I spoke by telephone with an individual who identified himself as Mr. Saul Reed.  I began our conversation by providing Mr. Reed my name, and the name of my employer, RRS, followed by the "Mini-Miranda" warning required by the [Fair Debt Collection Practices Act] ("This communication is from a debt collector and any information obtained will be used for that purpose.")  I advised him that I was calling in an attempt to collect the $1,556.53 debt which he owed to Acadian Ambulance Service.
>
> Mr. Reed did not dispute liability for all or any part of his debt during our brief conversation, which lasted less than two minutes.
>
> I asked Mr. Reed whether he was able to pay anything.  He seemed unconcerned and replied that he had

> no money and that there was nothing he could do.  He
> stated that he had no income and had been out of work
> for some time.  At that point, he apparently hung up on
> me because the line went dead without either of us saying
> goodbye.
>
> Neither one of us raised our voices [or] threatened
> each other.
>
> Mr. Reed did not ask or tell me not to call him
> back.  There is no written request from Mr. Reed
> instructing RRS to cease communications with him in his
> file....

RRS attempted to call Mr. Reed on other occasions, but he either failed to answer or hung up on the caller.  In mid-March 2016, RRS stopped calling Mr. Reed when an attorney for Mr. Reed sent RRS a cease and desist letter.

On April 6, 2016, RRS reported Mr. Reed's unpaid Acadian Ambulance account to one or more of the major Consumer Reporting Agencies.  On November 17, 2016, RRS (on behalf of Acadian Ambulance Corporation) filed a civil collection petition in the First City Court of New Orleans.  Meanwhile, on July 12, 2016, Mr. Reed sued RRS, alleging that RRS violated the Fair Debt Collection Practices Act by: using harassing and abusive tactics to collect the debt in violation of 15 U.S.C. § 1692d; making false, deceptive, and misleading representations regarding the debt, in violation of 15 U.S.C. § 1692e; using unfair and unconscionable debt collection methods, in violation of 15 U.S.C. § 1692f; and failing to send the plaintiff a written notice containing the

language required by 15 U.S.C. § 1692g. Mr. Reed also alleged that RRS's unfair and deceptive actions violate the Louisiana Unfair Trade Practices and Consumer Protection Act, La.R.S. § 51:1405. Mr. Reed seeks an injunction requiring RRS to cease all collection efforts against him; he also seeks statutory damages under the FDCPA of $1,000; actual damages pursuant to 15 U.S.C. § 1692k and La.R.S. § 51:1409; trebled damages pursuant to La.R.S. § 51:1409; and costs and attorney's fees pursuant to 15 U.S.C. § 1692k and La.R.S. § 51:1409.

RRS now seeks to dismiss the plaintiff's complaint pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure, or, alternatively, RRS seeks summary judgment. Mr. Reed cross moves for summary judgment.

I.

*A.*

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. King v. U.S. Dep't of Veterans Affairs, 728 F.3d 410, 416 (5th Cir. 2013); Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). The Court may find a plausible set of facts to support subject matter jurisdiction by considering any of the

following: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996).

In addition to the jurisdictional challenge, the defendant also seeks dismissal of the plaintiff's claims for failure to state a claim under Rule 12(b)(6). The standard of review applicable to motions to dismiss under Rule 12(b)(1) is similar to that applicable to motions to dismiss under Rule 12(b)(6). See Williams v. Wynne, 533 F.3d 360, 364-65 n.2 (5th Cir. 2008)(observing that the Rule 12(b)(1) and Rule 12(b)(6) standards are similar, but noting that applying the Rule 12(b)(1) standard permits the Court to consider a broader range of materials in resolving the motion). Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim

showing that the pleader is entitled to relief." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009)(citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> at 678 (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." <u>See</u> <u>Thompson v. City of Waco, Texas</u>, 764 F.3d 500, 502 (5th Cir. 2014) (citing <u>Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys</u>, 675 F.3d 849, 854 (5th Cir. 2012)(en banc)). But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. <u>Id.</u> at 502-03 (citing <u>Iqbal</u>, 556 U.S. at 678).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" <u>Gonzalez v. Kay</u>, 577 F.3d 600, 603 (5th Cir. 2009)(quoting <u>Iqbal</u>, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Twombly</u>, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

*B.*

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. In this regard,

the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). Ultimately, "[i]f the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate. Id. at 249 (citations omitted); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) ("Unauthenticated documents are improper as summary judgment evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although

the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

## II.

The U.S. Constitution limits federal court jurisdiction to actual cases or controversies. U.S. Const., Art. III, § 2. Derived from the Article III case or controversy requirement, the standing doctrine "limits the categories of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1545 (2016)(citations omitted). Three elements comprise the "irreducible constitutional minimum" of standing:

> The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.

Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). "The injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete *and* particularized.'" Spokeo, 136 S.Ct. at 1545 (quoting Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 180-81

(2000)(emphasis in Spokeo)).  "For an injury to be particularized,
it must affect the plaintiff in a personal and individual way."
Id. at 1548 (internal quotations, citation omitted).  For an injury
to be concrete, "it must actually exist[; it must be] real, and
not abstract."  Id. (internal quotations and citations omitted).
Notably, "Article III standing requires a concrete injury even in
the context of a statutory violation."  Id.  In other words,
Congress may not simply confer an injury-in-fact by granting a
person a statutory right and authorizing that person to sue to
vindicate that right.  Id.

RRS seeks to dismiss the plaintiff's claims on the ground
that he has not suffered an injury-in-fact sufficient to confer
Article III standing in light of Spokeo.[3]  The plaintiff counters

---

[3] In Spokeo, the defendant website operator generated a consumer
report that inaccurately reported certain information such as the
plaintiff's marital status, age, employment status, salary, and
educational history.  The plaintiff on his own behalf and on behalf
of a class sued Spokeo, Inc. under the Fair Credit Reporting Act,
alleging that the website operator violated the FCRA by generating
this report, but the plaintiff did not allege that he suffered any
monetary harm as a result of the FCRA violation.  The district
court dismissed the plaintiff's complaint for lack of standing.
The Ninth Circuit reversed, finding that the plaintiff had
sufficiently alleged injury-in-fact.  Because the Ninth Circuit
"failed to appreciate the distinction between concreteness and
particularization," the U.S. Supreme Court vacated the Ninth
Circuit's decision and remanded to determine "whether the
particular procedural violations alleged in this case entail a
degree of risk sufficient to meet the concreteness requirement."
Id. at 1550.

that he suffered an injury-in-fact.[4]  In support, he cites cases in other jurisdictions that have rejected standing challenges in FDCPA cases.  See Tourgeman v. Collins Fin. Servs., Inc., 755 F.3d 1109, 1116 (9th Cir. 2014)("the violation of [the] right not to be the target of misleading debt collection communications ...constitutes a cognizable injury under Article III."); Long v. Fenton & McGarvey Law Firm P.S.C., No. 15-1924, --- F. Supp. 3d ---, 2016 WL 7179367, at *3 (S.D. Ind. Dec. 9, 2016)("While courts have found that violations of other statutes, such as the Cable Communications Policy Act or FCRA, do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); Hayes v. Convergent Healthcare Recoveries, Inc., No. 14-1467, 2016 WL 5867818, at *4 (C.D. Ill. Oct. 7, 2016)("a violation of the right under § 1692e to be free from false or misleading representations from debt collectors creates a harm, or risk of harm, sufficient to meet the requirement of concreteness."); Quinn v. Specialized Loan Servicing, LLC, No. 16-2021, 2016 WL 4264967 (N.D. Ill. Aug. 11, 2016)(citing cases

---

[4] The plaintiff argues that he was told lies, threatened, and harassed, and that merely receiving inaccurate information is an injury because it impairs the consumer's ability to make informed decisions to address the debt. Jensen v. Pressler & Pressler, 791 F.3d 413, 421 (3d Cir. 2015)("the FDCPA was designed to give debtors reliable information so that they can make informed decisions about how to address debts.").

rejecting challenges to standing based on <u>Spokeo</u> in FDCPA cases). The Court is persuaded by these authorities.

Although the Court may conceive of an instance in which an allegation of a bare violation of the FDCPA's procedural disclosure requirements may not support standing,[5] where, as here, the plaintiff alleges that he has been victimized by harassment and false or misleading debt collection communications, he seeks to vindicate his substantive right to be free from debt collector abuse, which sufficiently alleges a concrete[6] and particularized[7] injury-in-fact. Mr. Reed's alleged injury is more than a bare procedural violation; it is the type of concrete injury Congress sought to eradicate in enacting the FDCPA. Mr. Reed has Article III standing.[8] RRS's motion to dismiss for lack of standing must be denied.

---

[5] <u>See</u> <u>Abercrombie v. Rogers, Carter, & Payne, LLC</u>, No. 15-2214, 2016 WL 8201965 (W.D. La. Nov. 22, 2016).

[6] Mr. Reed's alleged injury is concrete because he alleges that he was actually victimized by RRS's allegedly abusive debt collection practices; Mr. Reed alleges that RRS threatened him and harassed him and that this conduct caused him mental and emotional distress.

[7] Mr. Reed's injury is particularized because the alleged injury directly affected him in an individual way and is not a generalized grievance.

[8] There is no dispute that Mr. Reed's injury is fairly traceable to RRS's debt collection conduct, and that his injury would be redressed by a favorable decision by this Court.

III.

*A.*

The Fair Debt Collection Practices Act was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."   15 U.S.C. § 1692(e).   Section 1692d forbids debt collectors from engaging in conduct that harasses, oppresses, or abuses any person in connection with the collection of a debt.   Section 1692e provides a nonexclusive list of prohibited practices, including falsely representing the character, amount, or legal status of any debt, § 1692e(2)(A), and threatening to take any action that cannot legally be taken, § 1692e(5).   Section 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt."

"[T]he FDCPA does not ordinarily require proof of an intentional violation and, as a result, is described by some as a strict liability statute."   LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1190 (11th Cir. 2010).   Given that "Congress...clearly intended the FDCPA to have a broad remedial scope," the Fifth Circuit instructs that "[t]he FDCPA should...be construed broadly

and in favor of the consumer." <u>Daugherty v. Convergent Outsourcing, Incorporated</u>, 836 F.3d 507, 511 (5th Cir. 2016)(citations omitted).

In assessing whether a debt collector's conduct violates the FDCPA, the Court "must view [the communication] from the perspective of an 'unsophisticated or least sophisticated consumer.'" <u>Id.</u> (citations omitted). In so doing, the Court "assume[s] that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." <u>Id.</u> (citation omitted). "At the same time, however, the unsophisticated consumer is not one 'tied to the very last rung on the [intelligence or] sophistication ladder.'" <u>Id.</u> (citation omitted). A communication from a debt collector is misleading or deceptive "when it can be reasonably read to have two or more different meanings, one of which is accurate." <u>Brandon v. Eaton Group Attorneys, LLC</u>, No. 16-13747, 2017 WL 345864, at *3 (E.D. La. Jan. 24, 2017)(Vance, J.)(citations omitted). In a lawsuit seeking statutory damages, the plaintiff need not prove that he was actually misled by the letter. <u>Id.</u>

*B.*

As an initial matter, the Court observes that the plaintiff has streamlined his claims by clarifying that he is not advancing a claim under 15 U.S.C. § 1692c; and, he admits that the FDCPA

does not require that he receive the notice required by 15 U.S.C. § 1692g and, therefore, he abandons any such claim. Thus, insofar as the plaintiff alleged claims based on alleged violations of § 1692c and § 1692g, the Court will grant the defendant's motion for summary judgment and dismiss those claims.

The plaintiff submits that RRS violated the FDCPA in three ways: by two specific statements in the February 17 call and as a result of the cumulative effect of RRS's collection efforts. Accordingly, the cross motions for summary judgment[9] seek resolution of the plaintiff's three remaining FDCPA claims. Three issues are thus presented by the parties' cross motions: (1) Whether RRS violated § 1692e and § 1692f by lying to the plaintiff about the amount and character of the debt; (2) Whether RRS violated §§§ 1692d, 1692e, and 1692f by stating that the debt would get paid one way or another; (3) Whether RRS violated § 1692d(5) by calling plaintiff repeatedly. In evaluating whether summary judgment is appropriate, the Court reviewed the summary judgment record, including the audio recording of the February 17 call. To

---

[9] Although RRS alternatively seeks dismissal under Rule 12(b)(6) or summary judgment under Rule 56, the Court only properly considers the parties' cross motions for summary judgment. This is so for two reasons: (1) a Rule 12(b)(6) motion should have been advanced, if at all, prior to answering (see Fed. R. Civ. P. 12(b)); and (2) both sides submit evidence beyond the pleadings. See Fed. R. Civ. P. 12(d).

place the plaintiff's remaining FDCPA claims in context, it is helpful to again reproduce the transcript of this call:

**Mr. Reed:** Hello.

**RRS:** Hi, can I speak with Saul Reed?

**Mr. Reed:** yes ma'am...

**RRS:** I'm sorry. Is this Saul Reed?

**Mr. Reed:** Yes, it is. Speaking.

**RRS:** Hi, it's Ernestine Gill with Receivable Recovery Services. I'm calling...

**Mr. Reed:** Come again?

**RRS:** This is Receivable Recovery Services. We have an account from Acadian Ambulance...um...that they placed here for collections. Has a balance of $1,556.53.

**Mr. Reed:** For what?

**RRS:** We're just trying to call you to work out arrangements to get it taken care of. Um...I do have to tell you that this is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose. Um... Just let me know how you want to get it taken care of...

**Mr. Reed:** I hear you but I ain't knowing what you're saying ma'am.

**RRS:** This is regarding your account for Acadian Ambulance.

**Mr. Reed:** [unintelligible single syllable response]

**RRS:** They have a balance that they want to get paid....

**Mr. Reed:** [unintelligible three syllable response]

**RRS:** Just let me know who you want to pay it....

**Mr. Reed:** Well, ma'am, I'm not working at the moment....[unintelligible mumbling]

**RRS:** How long have you been...

**Mr. Reed:** [unintelligible single syllable response]

**RRS:** How long have you been out of work?

Mr. Reed: [unintelligible mumbling]...Since I come home from the hospital...

**RRS:** I'm sorry.

**Mr. Reed:** Since I left whatever hospital it is...

**RRS:** You don't know how long you been out of work? I mean when was the last time you worked someplace?

**Mr. Reed:** I had just gotten...I have just gotten released from jail [chuckling]

**RRS:** I'm sorry, you had what?

**Mr. Reed:** I had just got released from jail.

**RRS:** Okay. So how long have you been out of work?

**Mr. Reed:** Years...

**RRS:** Years...

**Mr. Reed:** Two...

**RRS:** Two years. So how are you paying your bills?

**Mr. Reed:** Maybe three...I don't know...

**RRS:** So how are you paying your other bills-your living expenses?

**Mr. Reed:** How am I what? Payin' my other bills?

**RRS:** Right, right. How are you paying your bills? I mean the rent, you know, electric bill, the food bill, the...you know, just your basic living expenses? How are those being paid?

**Mr. Reed:** Ummm...definitely getting' help with that...

**RRS:** Uh-hum... Who's helping you?

**Mr. Reed:** But I don't think that nobody goin' to help me with no...um, nothing bills... especially for nothing...$1500 for what? I didn't get any medicine...I don't recall nothing...I don't.

**RRS:** This was an ambulance ride. The ambulance picked you up from 3007...

**Mr. Reed:** I'm sorry. I'm sorry, so ma'am there's nothing I can do. Nothin' right at this moment...

**RRS:** Are you refusing to pay the debt? Cause you owe the debt. You need to do something to pay these guys back....They were there when you needed 'em

**Mr. Reed:** I...I...

**RRS:** And they helped you when you needed them, so you need to do something. Do the right thing. And try to pay these people back for what they did for you.

**Mr. Reed:** [chuckling]

**RRS:** At this point, you can laugh it off but it's not a joke...

**Mr. Reed:** [continued chuckling] 1,500?

**RRS:** $1556...

**Mr. Reed:** [laughing]...You serious? Right...15?...That sound reasonable to you? I'm asking...but...

**RRS:** That sounds very reasonable. Do you know how expensive an ambulance is? How expensive it is to train an EMT? How expensive the medicines in an ambulance are? Just you stepping inside that ambulance is a good $2,000, so you got a deal. They cut you a break on this. You know. But you need to do something to pay these people back... So and it's gonna' hit your credit. It's going to affect your credit, so it is not a joking matter. It's something that you need to take seriously. And you need to do something to get it resolved. So I'm going to go ahead on and list it. At this point, it is listed as a refusal to pay, but we will pursue other options and it will get paid one way or another. So we're here to try to work with you voluntarily, but if you think it's a laughing matter, I'm here to tell you that it's not.

**Mr. Reed:** ...That's not even the point. First off...

**RRS:** What do you mean?

**Mr. Reed:** Second off...

**RRS:** What do you mean?

**Mr. Reed:** You thought about...you thought about [unintelligible]

**RRS:** Sir, I have no idea what you are talking about...

**Mr. Reed:** Don't worry about it...[hangs up]


There are no facts in dispute. Considering this exchange on February 17, the Court turns to consider whether the plaintiff or defendant is entitled to summary judgment regarding the plaintiff's three FDCPA claims.

1.  Whether RRS violated §§ 1692e and 1692f by opining that
    the plaintiff got a "deal."


Section 1692e provides:


A debt collector may not use any false, deceptive, or
misleading representation or means in connection with
the collection of any debt.  Without limiting the general
application of the foregoing, the following conduct is
a violation of this section:

...

(2) The false representation of—

     (A) the character, amount, or legal status of any
debt...

...

(5) The threat to take any action that cannot legally be
taken or that is not intended to be taken.

...

(10)  The use of any false representation or deceptive
means to collect or attempt to collect any debt or to
obtain information concerning a consumer.


15 U.S.C. § 1692e.  15 U.S.C. § 1692f states:  "A debt collector

may not use unfair or unconscionable means to collect or attempt

to collect any debt."  Like § 1692e, § 1692f then provides a non-

exhaustive list of conduct that violates this section.


     The plaintiff submits that this statement made in the February

17 call was false, deceptive, and misleading to the unsophisticated

consumer:


     "[j]ust you stepping inside that ambulance is a good
     $2,000, so you got a deal.  They cut you a break on
     this."

The plaintiff challenges this excerpt from the February 17 call as constituting a false representation regarding the character of the debt under 1692e(2)(A) and a false, misleading, and unfair means of debt collection under Sections 1692e and 1692f generally. The defendant counters that nothing said in the February 17 call was false, deceptive, or misleading to an unsophisticated debtor because the only amount Ms. Gill ever asked Mr. Reed to pay was the true amount, $1,556.53, an amount she repeated twice. Read in context, RRS submits, Ms. Gill's quoted remark is an offhand statement of opinion responding to Mr. Reed's question "$1500...that sound reasonable to you?"; that it would not mislead a hypothetical unsophisticated debtor; and, in any event, that the statement was not material. The Court agrees.

Ms. Gill's statement that Mr. Reed got a "deal" because stepping inside an ambulance costs $2,000 must be considered in the context of the entire February 17 communication. See Gonzalez v. Kay, 577 F.3d 600, 607 (5th Cir. 2009)("We do not construe the disclaimer in isolation but must analyze whether the letter is misleading as a whole."). Ms. Gill advised Mr. Reed twice of the exact correct amount owed to Acadian. Her statement regarding the "deal" he got was in direct response to Mr. Reed asking her opinion as to whether she thought that $1,500 for one ambulance ride was reasonable. Considering this statement in the context of the

23

February 17 exchange, as it must, the Court finds that an unsophisticated consumer would not perceive the communication as false, deceptive, or misleading. Notably, it is undisputed that a false or misleading misrepresentation must be material in order for it to violate the FDCPA. See Peter v. GC Servs. L.P., 310 F.3d 344, 350 (5th Cir. 2002)("Consequently, we conclude that the letter does not contain any real or material false, deceptive, misleading representation in connection with the collection of the debt within the meaning of § 1692e."); Hahn v. Triumph P'ships LLC, 557 F.3d 755, 758 (7th Cir. 2009)("a false but non-material statement is not actionable" under the FDCPA because "[a] statement cannot mislead unless it is material."); Gomez v. Niemann & Heyer, L.L.P., No. 16-119, 2016 WL 3562148, at *4 (W.D. Tex. June 24, 2016)("A false, deceptive, or misleading statement is 'material' when it has 'the ability to influence a consumer's decision.'")(citing O'Rourke v. Palisades Acquisition XVI, LLC, 635 F.3d 938, 942 (7th Cir. 2011)).

Here, the plaintiff has failed to persuade the Court that Ms. Gill's statement of opinion in response to Mr. Reed's question eliciting her opinion, read in the context of the true amount owed along with the tenor of the entire exchange, had the ability to genuinely influence an unsophisticated consumer's decision. The

statement, even if capable of being false, is simply not material.[10]

Likewise, the plaintiff has failed to persuade the Court that the

abstract statement of opinion as to the reasonableness of the

amount owed...in response to the debtor's question seeking the

debt collector's opinion...constitutes an "unfair or

unconscionable" means to collect a debt within the meaning of §

1692f.[11] To be sure, Mr. Reed was not asked to pay $2000, or any

amount other than the exact amount presented on the Acadian

invoice. As a matter of law, there is no evidence that would

permit a reasonable jury to return a verdict for the plaintiff.

Because the challenged statement was not a materially false,

deceptive, or misleading representation, nor was it unfair or

---

[10] The plaintiff argues that lying to a consumer about a debt being discounted has the ability to affect a consumer's decision and that, if such a statement were not material, "there would be no reason for a collector to use them." In other words, the plaintiff argues that all statements made by debt collectors are material and capable of influencing the debtor. This is, at best, wishful hyperbole.

[11] At best, this claim appears to be redundant, considering that the plaintiff does not identify any conduct not already addressed by other sections of the FDCPA. In fact, the plaintiff fails to advance any argument or present any case literature addressing how this particular statement (a statement of opinion in response to the debtor's request for that opinion) might constitute an unfair or unconscionable means to collect a debt. This failure is likely attributable to the fact that the plaintiff has no legal support for a Section 1692f claim here. See Turner v. Prof'l Rec. Servs., Inc., 956 F. Supp. 2d 573, 580 (D.N.J. 2013)("Because the plaintiff does not point to any alleged unfair or unconscionable conduct not addressed by [other provisions of the FDCPA], her claims pursuant to § 1629f are redundant" and summary judgment dismissing them is warranted).

unconscionable, RRS is entitled to judgment as a matter of law dismissing the plaintiff's Sections 1692e and 1692f claim based on this statement.

> 2. Whether RRS violated §§§ 1692d, 1692e, and 1692f by stating that the debt would get paid "one way or another."

Section 1692d provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> ...
>
> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
>
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
>
> ....

Again, § 1692e provides: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692f states: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

Mr. Reed challenges Ms. Gill's statement in the February 17 call that RRS "will pursue other options and [the debt] will get paid one way or another." Mr. Reed submits that this statement is untrue, constitutes a threat to take action that cannot legally be

26

taken or that is not intended to be taken" under Section 1692e(5), is deceptive or misleading to the unsophisticated consumer because it implies that the defendant will extract the debt from the plaintiff through extra-judicial or illegal actions, and the natural consequence of such a statement is to harass, oppress, and abuse the plaintiff in violation of Section 1692d(1) and (2). RRS counters that, the "one way or another" phrase, read and listened to on the audio in context, demonstrates the absence of any hostility or implicit threat. Not only did it intend to pursue other options to recover the debt, RRS submits, it in fact did so by calling after February 17; credit reporting the unpaid account on April 6, 2016; and by eventually filing a collection petition against Mr. Reed on November 17, 2016.

Consider the statement that RRS would collect the debt "one way or another" within the context of this exchange between Ms. Gill and Mr. Reed:

> **Mr. Reed:** [laughing]...You serious? Right...15?...That sound reasonable to you? I'm asking...but...

> **RRS:** That sounds very reasonable. Do you know how expensive an ambulance is? How expensive it is to train an EMT? How expensive the medicines in an ambulance are? Just you stepping inside that ambulance is a good $2,000, so you got a deal. They cut you a break on this. You know. But you need to do something to pay these people back... So and it's gonna' hit your credit. It's going to affect your credit, so it is not a joking matter. It's something that you need to take seriously. And you need to do something to get it resolved. So I'm going to go ahead on and list it. At this point, it is listed

as a refusal to pay, but we will pursue other options
and it will get paid one way or another. So we're here
to try to work with you voluntarily, but if you think
it's a laughing matter, I'm here to tell you that it's
not.

Read in context, the statement demonstrates that the
unsophisticated consumer would neither consider this a threat to
use violence or criminal means to recover the debt, nor consider
it deceptive or misleading; indeed, RRS pursued other (legal) means
of collecting the debt. Analogous case literature persuades the
Court that RRS is entitled to judgment as a matter of law
dismissing this claim.[12]

Courts routinely determine that innocuous statements alluding
to the debt collector's legal rights and means to collect debts
are not actionable under the FDCPA. "[M]erely advising the debtor
of the agency's options with which to pursue the debt is the sort
of truism that is legally insufficient to violate 1692e." Sparks
v. Phillips & Cohen Assoc., Ltd., 641 F. Supp. 2d 1234, 1249 (S.D.
Ala. 2008)(debt collector's statement to plaintiff that it could
force her to sell her deceased mother's house in probate to pay
her mother's debts was neither a threat nor a false statement,
but, rather, an innocuous statement of the debt collector's legal

---

[12] That debt collection companies seem to have somewhat unsavory
reputations is not enough to support plaintiff's grievances.

rights).  In <u>Shuler v. Ingram & Assoc.</u>, 710 F. Supp. 2d 1213, 1221 (N.D. Ala. 2010), the court held that a debt collector's statement that it "may place a lien on plaintiff's property, garnish [plaintiff's] wages, that [the debt collector] prosecutes debts like his, and always wins" did not constitute threats or actions that the debt collector could not or did not intend to take.  And, perhaps most convincing, another court considered a debt collector's statement that it would get the money "one way or another" and nevertheless found, as a matter of law, that the statement was not harassing, oppressive, or abusive.  <u>See</u> <u>Thomas v. LDG Financial Services, Inc.</u>, 463 F. Supp. 2d 1370, 1373 (N.D. Ga. 2006)(finding that the plaintiff had failed to state a claim under Section 1692d because the debt collectors' statements -- that they were going to get their money one way or another, yelling that Georgia is a garnishable state and then hanging up on the plaintiff, and asking the plaintiff what her problem was because she was making the same salary when she was paying her bills -- were not harassing, oppressive, or abusive).

No facts are in dispute.  As a matter of law, there is no evidence in the record that would permit a reasonable jury to return a verdict for the plaintiff.  Accordingly, because the statement in context does not violate Sections 1692d, 1692e, or 1692f, RRS is entitled to judgment as a matter of law dismissing the plaintiff's claims.

3.    Whether RRS violated § 1692d(5) by calling Plaintiff
      repeatedly.


Section 1692d(5) states:

A debt collector may not engage in any conduct the
natural consequence of which is to harass, oppress, or
abuse any person in connection with the collection of a
debt.  Without limiting the general application of the
foregoing, the following conduct is a violation of this
section:

...

(5) Causing a telephone to ring or engaging any person
in telephone conversation repeatedly or continuously
with intent to annoy, abuse, or harass any person at the
called number....

Intent to harass "may be inferred from the frequency, pattern, or

substance of the telephone calls that [the debtor] received from

the debt collector." Karp v. Financial Recovery Services, Inc.,

No. 12-985, 2013 WL 6734110, at *6 (W.D. Tex. 2013)(six calls over

a two-week period did not establish an intent to harass)(citations

omitted); Bell v. CSD Collection Specialist, No. 11-280, 2013 WL

311841, at *3 (M.D. La. 2013)(debt collector's five calls to

plaintiff on four days over a 13 day period did not raise a genuine

issue of material fact regarding whether debt collector harassed

debtor); Tucker v. The CBE Group, Inc., 710 F. Supp. 2d 1301, 1303-

06 (M.D. Fla. 2010)(facts did not raise reasonable inference of

intent to harass where debt collector made 57 calls to the

plaintiff, including seven calls in one day, because the debt

collector never spoke to the debtor, was never asked to cease

calling, and never called back on the same day it had left a

message.); <u>Udell v. Kansas Counselors, Inc.</u>, 313 F. Supp. 2d 1135, 1143-44 (D. Kan. 2004)(fact that debt collector placed four automated telephone calls to consumers in a seven day period without leaving messages did not, as a matter of law, constitute harassment under the FDCPA); <u>Arteaga v. Asset Acceptance, LLC</u>, 733 F. Supp. 2d 1218, 1227 (E.D. Ca. 2010)(18 calls over approximately five month period did not violate Section 1692d(5), but even if the plaintiff's account of "almost daily" calls is true, plaintiff failed to raise a genuine issue of material fact on her Section 1692d claim).

In <u>Arteaga</u>, the district court surveyed case literature on § 1692d(5) harassment, noting that intent to harass may be inferred from frequency of calls, substance of calls, or place to which calls are made: a debt collector may harass a debtor by immediately recalling a debtor after a debtor has hung up the phone; a debt collector may harass a debtor by continuing to call the debtor after the debtor has requested that the debt collector cease and desist communication; a debt collector may harass a debtor by calling the debtor's workplace or calling at inconvenient hours; a debt collector may harass a debtor by calling multiple times in a short period of time, such as six phone calls in 24 minutes or calling four or five times each day. 733 F. Supp. 2d at 1227-29.

The Court finds that RRS's conduct does not rise to the level of harassment under Section 1692d; the plaintiff has failed to raise a triable issue of fact as to whether the phone calls were initiated with the intent to harass in violation of Section 1692d(5). It appears that RRS called Mr. Reed approximately 14 times over a five week period of time (from February 8 until March 17); six of the calls were not answered and about the same number were answered but nothing was said because the person answering the phone hung up. This number neither presents a genuine issue for trial regarding whether RRS violated the FDCPA in contacting him, nor does it rise to a level of harassment as measured by the case literature. Indeed, courts have noted that "[a] remarkable volume of telephone call is permissible under FDCPA jurisprudence." Karp, 2013 WL 6734110, at *6 (citing cases with high volume calls including 114 calls in a four-month period; 149 calls in a two-month period; 55 calls over three and a half months; 57 calls, including 7 in one day). Moreover, putting aside the number of calls, there is no evidence of egregious conduct present in this case. There is no evidence that RRS called multiple times in a single day, or called his place of employment or his family or friends, or called at odd hours, or called after Reed requested that RRS stop calling. Mr. Reed never told RRS to stop calling. RRS stopped calling once it received a letter from Mr. Reed's attorney on March 18. The evidence in the record simply does not

support a harassment claim.  Again, there are no facts in dispute
as to Mr. Reed's final FDCPA claim.  As a matter of law, there is
no evidence in the record that would permit a reasonable jury to
return a verdict in favor of Mr. Reed on this claim.  Accordingly,
summary judgment in favor of RRS is appropriate.

IV.

The Louisiana Unfair Trade Practice and Consumer Protection
Act, La.R.S. 51:1401-18, prohibits "[u]nfair methods of
competition and unfair or deceptive acts or practices in the
conduct of any trade or commerce."  La.R.S. § 51:1405A.  The LUTPA
affords a cause of action to any person "who suffers any
ascertainable loss of money or moveable property...as a result of
the use or employment by another person of an unfair or deceptive
method, act or practice."  La.R.S. § 51:1409A.  "[A] practice is
unfair when it offends established public policy and when the
practice is unethical, oppressive, unscrupulous, or substantially
injurious."  Rogers v. Brooks, 122 Fed.Appx. 729, 733 (5th Cir.
2004)(quoting Jarrell v. Carter, 577 So.2d 120, 123 (La. App. 1
Cir. 1991)).  A practice is deceptive "when it amounts to fraud,
deceit, or misrepresentation."  Mixon v. Iberia Surgical, L.L.C.,
956 So. 2d 76, 80 (La. App. 3 Cir. 2007).  A practice need not be
both unfair and deceptive to offend LUTPA.  Monroe Med. Clinic,
Inc. v. Hosp. Corp. of Am., 622 So. 2d 760, 763 (La. App. 2 Cir.

33

1993). Determination of whether a particular practice offends LUTPA is left to the courts, to be determined on a case by case basis. <u>Turner v. Purina Mills, Inc.</u>, 989 F.2d 1419, 1422 (5th Cir. 1993).

Assuming that the LUTPA applies to debt collection conduct, the plaintiff fails to point to any evidence in the record demonstrating that RRS engaged in conduct amounting to unfair or deceptive debt collection practices within the meaning of the statute. Here, Mr. Reed never told RRS that he disputed the debt owed, and he never told RRS to stop contacting him (when his attorney wrote to RRS to stop, it stopped). As already determined in connection with his FDCPA claims, RRS's conduct did not rise to the level of unfair or deceptive or harassing conduct within the meaning of that statute. That same conduct falls short of creating a triable issue for trial with respect to a LUTPA claim. Finally, there is no evidence in the record that Mr. Reed has suffered any loss as a result of RRS's business practices. His claim fails as a matter of law. <u>See</u> La.R.S. § 51:1409A ("Any person who suffers any ascertainable loss of money or...property...as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually...to recover actual damages.").

Accordingly, for the foregoing reasons, IT IS ORDERED: that the defendant's motion to dismiss or for summary judgment is DENIED in part (as to its request to dismiss for lack of standing) and GRANTED in part (as to its request for summary judgment dismissing the plaintiff's claims) and the plaintiff's cross motion for summary judgment is DENIED. The plaintiff's claims are hereby dismissed.

New Orleans, Louisiana, April 19, 2017

MARTIN L.C. FELDMAN
U.S. DISTRICT JUDGE